IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


|  |  |
|---|---|
| CONTINENTAL INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action 05-1152 |
| | ) |
| NANCY J. KOVACH, TROYE KOVACH, | ) |
| REBECCA RICHTER VILLA and | ) |
| NICHOLAS VILLA, her husband, | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM ORDER

CONTI, District Judge.

In this memorandum order, the court considers the cross-motions for summary judgment

filed by plaintiff Continental Insurance Company ("plaintiff"), (Doc. No. 39), and by defendants

Rebecca Richter Villa ("Rebecca Villa") and Nicholas Villa (collectively, the "Villa

defendants"), (Doc. No. 46), with respect this declaratory judgment action.  After considering the

submissions of the parties, the court will grant plaintiff's motion for summary judgment and deny

the Villa defendants' motion for summary judgment for the reasons set forth herein.


### *Factual Background*

The material facts of this case are not seriously disputed.  On or about September 22,

2004, defendants Villa filed a civil complaint in the Court of Common Pleas of Allegheny

County, Pennsylvania, against defendant Troye Kovach alleging, among other things, that on

June 21, 2003, or thereabout, Troye Kovach furnished a bottle of liquor to Christopher

Hutchinson ("Hutchinson"), a minor; that on the evening of June 24, 2003, through the early

morning of June 25, 2003, Hutchinson consumed that liquor to the point of intoxication; that

after consuming the liquor, Hutchinson proceeded to operate his automobile; and that this

resulted in a collision between Hutchinson's vehicle and defendant Rebecca Villa's vehicle

which seriously injured Rebecca Villa.  Pl.'s Ex. A.; Defs.' Ex. A (the "Villa Complaint").[1]

The Villa Complaint specifically alleged:

> 3. On June 21, 2003, or thereabout, the defendant, Troye Kovach, did negligently, carelessly, and/or recklessly furnish a bottle of liquor to Christopher Hutchinson, a minor.

> 4. At all relevant times hereto, the defendant, Troye Kovach, was aware that Christopher Hutchinson was a minor and could not possess or consume alcoholic beverages in the Commonwealth of Pennsylvania.

> 5. During the evening of June 24, 2003 through the early morning of June 25, 2003, Christopher Hutchinson consumed the liquor provided to him by the defendant, Troye Kovach, to the point of intoxication.

> 6. After Christopher Hutchinson consumed the aforementioned liquor, he proceeded to operate his automobile on S.R. 88 (also known as Library Road) located in the Municipality of Bethel Park, Allegheny County, Pennsylvania.

> 7. As a proximate result of his intoxicated state, Christopher Hutchinson was unable to operate his vehicle in a safe and proper manner in accordance with the statutes, regulations and other laws of the Commonwealth of Pennsylvania.

---

[1]On February 10, 2006, the clerk of court entered default judgment against defendants Nancy J. Kovach ("Nancy Kovach") and Troye Kovach for failure to answer or otherwise respond to the complaint filed in this civil action.  (Doc. No. 17).

8. On June 25, 2003, at approximately 12:30 a.m., Christopher Hutchinson was observed by Bethel Park Police Officer John Symsek to be traveling at a dangerous and excessive rate of speed on S.R. 8.

9. When Christopher Hutchinson realized that he had been observed by Officer Symsek and that Officer Symsek had activated his emergency lights, Christopher Hutchinson turned off his head lights and continued to drive at a high rate of speed to avoid being stopped and arrested for driving under the influence of alcohol.

10. While attempting to elude the pursuit of Officer Symsek, Christopher Hutchinson operated his vehicle in such a careless and negligent manner that he drove onto a concrete median and struck the vehicle operated by the plaintiff, Rebecca Richter Villa, which was traveling south on S.R. 88.

11. At the time of the accident, the plaintiff, Rebecca Richter Villa, was employed as a Police Officer with the Municipality of Bethel Park.

12. As a result of Defendant Troye Kovach's negligent and wrongful conduct in furnishing alcohol to Christopher Hutchinson, a minor, the plaintiff, Rebecca Richter Villa, was seriously injured when her vehicle was involved in the collision with the vehicle operated by Christopher Hutchinson. . . .

Villa Complaint ¶¶ 3-12.  The Villa Complaint contained two counts: one count seeking damages against Troye Kovach for personal injuries to Rebecca Villa and one count seeking damages for loss of society of his wife by Nicholas Villa.  Id. ¶¶ 1-16.

During the time period between March 31, 2003, and March 31, 2004, defendant Nancy Kovach was a named insured under a homeowners' insurance policy issued by plaintiff for a residence located at 3745 Myrtle Avenue, Pittsburgh, Pennsylvania.  Joint Statement of Material Facts ("JSMF") ¶4.  The policy number for the policy issued to Nancy Kovach for this property (the "Policy") was US 214343727.  Pl.'s Ex. B at 2.  Defendant Troye Kovach, son of Nancy

Kovach resided at this insured residence.  JSMF ¶6.  There is no dispute that Troye Kovach is a "covered person" under the Policy.

The parties have attached documents related to the Policy to the appendices for the cross-motions for summary judgment.  Pl.'s Ex. B; Defs.' Ex. B and C.  These include a "USP Special Renewal Policy Coverage Summary" for the period between March 31, 2003, and March 31, 2004.  Pl.'s Ex. B at 1-3.  This document summarizes the terms of the coverage, limits, and premiums under the Policy.  Id.  It also lists under "General Policy Information" that the Policy is subject to certain listed forms and endorsements.  Id. at 3.  These include G18535-A (09-93) ("Special-Home") and G-15380A (06-95) ("Transition Endorsement - Special Home Segment").  Id.

The former of these, G18535-A (09-93) ("Special-Home"), includes a section with respect to liability coverage for the insured home (as opposed to property coverage for the home) entitled "LOSSES WE DO NOT COVER."  Id. at 8-10.  Among other things, this section indicates that, with respect to personal liability and medical expense, coverages do not apply to bodily injury:

> (h) Intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of one or more **covered persons**.  This exclusion applies even if:
>
> (1) Such **covered person** lacks the mental capacity to govern his or her conduct;
>
> (2) Such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
>
> (3) Such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **covered person** is actually charged with or convicted of a crime.

Id. at 8-9 (internal page 17-18)(bold emphasis in original; underline emphasis added).

The latter of these, G-15380A (06-95) ("Transition Endorsement - Special Home Segment"), modifies some of the provisions of the Policy, including subsection (h) quoted above. Id. at 11 (internal page 1).  Relevant to the instant matter, with respect to liability coverage for the insured home, "LOSSES WE DO NOT COVER" is amended by, among other things, modifying the policy exclusion set forth in subsection (h) quoted above so that new subsection (h) reads as follows:

(h) Intended by, or which may reasonably be expected to result from the intentional acts or omissions of one or more **covered persons**.  This exclusion applies even if:

(1) Such **covered person** lacks the mental capacity to govern his or her conduct;

(2) Such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or

(3) Such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

Id. at 11-12 (internal page 1-2)(emphasis in original).  In addition, the Policy is amended by the addition of a policy exclusion set forth in new subsection (p) as follows:

(p) Resulting from criminal acts or omissions of or at the direction of one or more **covered persons**.  This exclusion applies even if:

(1) Such **covered person** lacks the mental capacity to govern his or her conduct;

5

       (2) Such **covered person** is not actually charged with or convicted of a crime.

Id. at 12 (internal page 2)(bold emphasis in original; underline emphasis added).

In effect, these modifications entail splitting the previous subsection (h) set forth in the G18535-A (09-93) ("Special-Home") document, which sets forth a policy exclusion for intentional acts **or** criminal acts of covered persons under certain circumstances, into two separate subsections, one of which, new subsection (h), sets forth a policy exclusion for intentional acts of covered persons under certain circumstances, and the other of which, new subsection (p), sets forth a policy exclusion for criminal acts of covered persons under certain circumstances.

Plaintiff sent Nancy Kovach two separate reservation of rights letters related to the matters in the civil complaint filed by the Villa defendants against Troye Kovach. The first letter was sent on July 21, 2004, by Tammy Weidner on behalf of plaintiff. Pl.'s Ex. D. The second letter was sent on November 11, 2004, by Robert Unterburger on behalf of plaintiff. Pl.'s Ex. E. These letters both reference the Policy and the civil claim filed by the Villa defendants against Troye Kovach. See Pl.'s Ex. D, Pl.'s Ex. E. The letters contain similar language with respect to plaintiff's intent to provide a defense with respect to the claim until a determination is made whether plaintiff has responsibility in the matter. See Pl.'s Ex. D, Pl.'s Ex. E. Both letters also refer to plaintiff's information at the time that Troye Kovach may be responsible for furnishing alcoholic beverages to a minor in connection with the claim. See Pl.'s Ex. D, Pl.'s Ex. E.

The reservation of rights letters differ in that the July 21, 2004, letter from Ms. Weidner quoted language from subsection (h) of G18535-A (09-93) ("Special-Home"), the subsection that sets forth a policy exclusion for intentional acts **or** criminal acts of covered persons under certain

circumstances, while the November 23, 2004, letter from Mr. Unterburger quoted language from subsection (p) of G-15380A (06-95) ("Transition Endorsement - Special Home Segment"), the subsection that sets forth a policy exclusion for <u>criminal acts</u> of covered persons under certain circumstances.  Pl.'s Ex. D, Pl.'s Ex. E.

 Ms. Weidner testified in her deposition that she quoted the wrong part of the policy in her reservation of rights letter.  Pl.'s Ex. C at 22-23.  She explained at her deposition: "Basically I quoted the wrong part of the policy, I didn't necessarily misquote the actual policy.  It pretty much reads the same as the endorsement."  <u>Id</u>.  Mr. Unterburger explained at his deposition that Ms. Weidner had quoted the language in the homeowner's form, G18535-A (09-93) ("Special-Home"), instead of quoting the language from the applicable endorsement, G-15380A (06-95) ("Transition Endorsement - Special Home Segment").  Pl.'s Ex. F at 42.  Mr. Unterburger testified that the endorsement which replaced the exclusion cited by Ms. Weidner would apply to Nancy Kovach's policy and the claims asserted by the Villa defendants against Troye Kovach because the transition endorsement was listed on the declaration page of the policy issued to Nancy Kovach.  <u>Id</u>..  Plaintiff's position is that the endorsement replaced the intentional and criminal act exclusion quoted by Ms. Weidner.  JSMF ¶ 17.

 Nancy Kovach testified that she received both reservations of rights letters.  Pl.'s Ex. G at 17, 19-20.  When she was questioned about her understanding of the reservation of rights letters, and in particular when she was asked to compare the quoted coverage exclusions in the two letters, Nancy Kovach testified that her understanding was that they basically were asserting the same thing:

> Q: What I'm going to ask you to do is to compare what
>    was the reason given here for not paying the claim

7

which would be in [the July 21, 2004 letter] versus [the November 23, 2004 letter] and ask you if those are two different – if the language is different and it's a different exclusion as far as you could read it?

[Objection; Question rephrased as asserting a coverage issue.]

A:    The main clause that I saw in both of them was that because it was a criminal action the insurance company excludes that.

. . . .

Q:    Would you agree with me that the language is actually different, these two quoted policy languages are quoting different provisions of the policy?

[Objection.]

A:    To me they appear to be saying the same thing.

Q:    Okay.

A:    At least I felt when I got both of these I remember that was the thing that stuck out, that they appeared to be saying the same thing, this is not covered because – or this will possibly not be covered because of the fact that they resulted from a criminal act.

Id. at 20-22.

Before Nancy Kovach acquired the deed to the property at 3745 Myrtle Avenue, her parents owned the property.  Id. at 6.  Upon acquiring it, she had the insurance policy for the property that was issued to her parents by plaintiff issued to her in her name.  Id. at 8-9, 34. Nancy Kovach testified that she had never read the policy.  Id. at 23-24.  She testified that her understanding of a homeowner's insurance policy was that it would not cover the kind of personal injury claim involved in this lawsuit.  Id.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1ˢᵗ Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added).

9

*Discussion*

I.      **Declaratory Judgment Act**

Plaintiff commenced this civil action seeking a declaratory judgment pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201, which provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . .  any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as
> such.

28 U.S.C. § 2201(a).  In this case, plaintiff specifically seeks that the court declare that plaintiff

does not have a duty to defend and indemnify defendant Troye Kovach under the homeowner's

insurance policy issued to his mother, Nancy Kovach, for injuries to defendant Rebecca Villa that

resulted from a collision between Rebecca Villa and Christopher Hutchinson, a minor to whom

Troye Kovach admitted supplying alcohol.

Count I of the declaratory judgment complaint alleges that the claims asserted by

defendants Villa in their civil complaint against defendant Troye Kovach are not covered by the

Policy by virtue of an exclusion for bodily injury intended by, or which may reasonably be

expected to result from, the intentional acts of a covered person (the "intentional acts exclusion")

and Count II of the declaratory judgment complaint alleges that the claims asserted by defendants

Villa in their civil complaint against defendant Troye Kovach are not covered by the Policy by

virtue of an exclusion for bodily injury resulting from criminal acts by a covered person (the

"criminal acts exclusion").

10

**II.     Duty to Defend; Duty to Indemnify under Pennsylvania Law**

It is undisputed that the law of the Commonwealth of Pennsylvania applies to this civil

action.  Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the

injured party potentially comes within the policy's coverage.  Sikirica v. Nationwide Ins. Co.,

416 F.3d 214, 225 (3d Cir. 2005) (citing Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d

Cir.1985)).   The duty to defend is a distinct obligation from the duty to indemnify, and is a

broader obligation than the duty to indemnify.  Id. (citing Erie Ins. Exch. v. Muff, 851 A.2d 919,

925 (Pa. Super. Ct. 2004); Atl. Mut. Ins. Co. v. Brotech Corp., 857 F.Supp. 423 (E.D.Pa.1994),

aff'd, 60 F.3d 813 (3d Cir.1995)).  "Because the duty to defend is broader than the duty to

indemnify, there is no duty to indemnify if there is no duty to defend."  Id. at 225-26 (citing Mut.

Benefit Ins. Co. v. Haver, 725 A.2d 743, 746 n.1 (Pa. 1999); Erie Ins. Exch. v. Claypoole, 673

A.2d 348, 356 n.3 (Pa. Super. Ct. 1996)).

"After determining the scope of coverage under a policy, the court must examine the

complaint in the underlying action to determine whether it triggers coverage."  Id. at 226 (citing

Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997)).  If the underlying

complaint avers facts that might support recovery under the policy, coverage is triggered and the

insurer has a duty to defend.  Id.; see Haver, 725 A.2d at 745-46 ("[T]he particular cause of

action that a complainant pleads is not determinative of whether coverage has been triggered.

Instead it is necessary to look at the factual allegations contained in the complaint.") (citing

Scopel v. Donegal Mutual Insurance Co., 698 A.2d 602 (Pa. Super. Ct. 1997); Aetna Casualty

and Surety Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. Ct. 1994)).  "Both the duty to defend and the

duty to indemnify 'flow from a determination that the complaint triggers coverage.'"  Sikirica,

11

416 F.3d at 226 (quoting  Allen, 692 A.2d at 1095).

Moreover, "[t]he courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal acts." Federal Ins. Co. v. Potamkin, 961 F.Supp. 109, 113 (E.D.Pa. 1997) (citing Germantown Ins. Co. v. Martin, 595 A.2d 1172, 1175 (Pa.Super. Ct. 1991)); see Agora Syndicate, Inc. v. Levin, 977 F.Supp. 713, 716 (E.D.Pa. 1997); Britamco Underwriters, Inc. v. Stokes, 881 F.Supp. 196 (E.D.Pa. 1995).  Courts have held that requiring insurance companies to defend insureds for intentional torts or criminal acts would violate public policy.  See, e.g., Potamkin, 961 F.Supp. at 113.

## III.    Interpreting Insurance Contracts under Pennsylvania Law

"The basic principles of law governing insurance policy interpretation are well-settled in Pennsylvania." Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 171 (3d Cir. 2006) (citing  E. Associated Coal Corp. v. Aetna Cas. & Surety Co., 632 F.2d 1068, 1075 (3d Cir.1980)).  "The goal of interpreting an insurance policy, like the goal of interpreting any other contract, is to determine the intent of the parties." Id.  "It begins where it must – the language of the policy." Id.  (citing Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) ("The polestar of our inquiry . . . is the language of the insurance policy.")).

Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court. Lexington Ins. v. Western Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005).  Where the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language; where, however, a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  Lexington Ins., 423 F.3d at 323 (quoting Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n, Ins.

Co., 517 A.2d 910, 913 (Pa. 1986)).  "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'"  Regents of Mercersburg College, 458 F.3d at 172 (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986); citing Madison Constr. Co., 735 A.2d at 106)); Lexington Ins., 423 F.3d at 323 (quoting Hutchinson, 519 A.2d at 390).  "Courts should not, however, distort the meaning of the language or strain to find an ambiguity."  Id. (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)); USX Corp. v. Liberty Mutual Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006) ("[I]n Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it.'") (quoting Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

## IV.  Reservation of Rights Letters

In this case, there is no dispute what the various provisions of the Policy are.  The Villa defendants, however, argue that ambiguity is created by virtue of the fact that the reservation of rights letters sent by plaintiff referenced different versions of the language setting forth the intentional act exclusion and the criminal act exclusion in the Policy documents.  In addition, the Villa defendants argue that the language of the Policy is ambiguous by virtue of the policy exclusion cited in the main body of the Policy being amended by the transition endorsement.  Plaintiff argues that, regardless of the exclusion language cited in the reservation of rights letters, both reservation of rights letters put Nancy Kovach on notice that the claims asserted by the Villa defendants against Troye Kovach with respect to the injuries sustained by Rebecca Villa due to the collision with Hutchinson might not be covered by the Policy, relying upon Merchants Mutual Insurance Company v. Artis, 907 F.Supp. 886 (E.D.Pa. 1995) and Nationwide Mutual

Insurance Company v. Nixon, 682 A.2d 1310 (Pa. Super. Ct. 1996).

In Artis, the district court held that foster children who had lived with the insureds in that case were "in the care of" the insureds, were "residents" of their household, and thus were themselves "insureds" within the meaning of the "resident insured" exclusion in the homeowners' insurance policy at issue in that case.  907 F.Supp. at 890-91.  In Artis, the estates of the deceased foster children argued that the insurance company should be estopped from denying coverage to the insureds for multiple reasons, including that the two reservation of rights letters sent in that case did not reference the specific policy exclusion upon which the insurance company based its denial of coverage.  Id. at 891.

The district court, analyzing Pennsylvania law, noted the general rule is that an insurance company may not assume the defense of a suit which entails relinquishing to the insurer the management of the case and then later deny liability under the policy.  Id. (citing  Jones v. Robbins, 258 F.Supp. 585, 588 (E.D.Pa.1966), aff'd, 374 F.2d 1002 (3d Cir.1967)).  The court further noted, however, that an insurer may protect its rights under a policy by a timely reservation of rights which fairly informs the insured of the insurer's position.  Id. (citing Aetna Life and Cas. Co. v. McCabe, 556 F.Supp. 1342, 1354 (E.D.Pa.1983)).  The district court recounted the effect of a reservation of rights letter in the context of the estoppel argument at issue in that case:

> When seeking to estop an insurer from withdrawing from a case, the burden rests on the party asserting an estoppel to establish the defense by clear, precise, and unequivocal evidence.  Mendel v. Home Ins. Co., 806 F.Supp. 1206, 1215 (E.D.Pa.1992).  A party seeking to establish an estoppel must show "an inducement by the party sought to be estopped . . . to the party who asserts the estoppel. . . to believe certain facts to exist – and the party asserting the estoppel acts in reliance on that belief."  Sabino v. Junio, 441

14

> Pa. 222, 225, 272 A.2d 508, 510 (1971).  A determination of
> whether the insured relied to its detriment on an insurer's conduct
> requires an analysis of the facts relating to whether the party
> asserting estoppel has been prejudiced by the conduct of the
> insurer.  See Mendel, 806 F.Supp. at 1215. Thus, courts may apply
> an estoppel only when there is actual prejudice, such as when an
> insurer's failure to assert all possible defenses in a reservation of
> rights letter causes an insured to act to his detriment in reliance
> thereon.  Id.

Id.

In Artis, the district court considered and rejected the argument that the insurer in that case never properly reserved its rights to enforce the "resident insured" coverage exclusion because the two purported reservation of rights letters sent to the insureds did not make specific mention of the exclusion.  Id. at 891-92.  The court noted that although the reservation of rights letters made no specific reference to the "resident insured" exclusion which was eventually relied upon by the insurer in its disclaimer, "insurers who attempt to deny coverage are estopped from raising defenses not included in reservation of rights letters only if their failure to raise all possible defenses has caused actual prejudice to the insured."  Id. at 892 (citing Mendel, 806 F.Supp. at 1215).  The district court found in that case, even viewing the evidence in a light most favorable to the estates of the deceased foster children, the insureds would be unable to demonstrate actual prejudice.  Id. at 892-93.  The court noted that prejudice would not be presumed, but had to be conclusively established to effect an estoppel.  Id. at 892.  In addition, the court relied upon the fact that while the letter did not specifically mention the "resident insured" exclusion, it put the insureds on notice of a potential denial of coverage.  Id.; see Nationwide Mut. Ins. Co. v. Nixon, 682 A.2d 1310, 1314 (Pa. Super. Ct. 1996)(failure to include specific policy exclusion in reservation of rights letter as a possible defense did not constitute

waiver of that defense).

In this case, the Villa defendants do not explicitly characterize their argument that plaintiff cannot rely on the exclusion set forth in the second reservation of rights letter because it cited different language in the first reservation of rights letter as an "estoppel" argument.  Instead, the Villa defendants argue that the receipt of the two letters citing different exclusion language relating to criminal acts and intentional acts was confusing, and they use this evidence to bolster their argument that the insurance policy was ambiguously written in part due to the different language set forth for the intentional and criminal act exclusions in the main body of the description of the policy and the language as amended by the attached transition endorsement form.  With respect to the reservation of rights letters, however, plaintiff is not estopped from relying upon the letters to reserve its rights by virtue of the letters.

Unlike the letters in Artis, the letters in this case both make explicit reference to the fact that there may be a coverage exclusion due to the fact that Troye Kovach may be reponsible for furnishing alcohol to a minor in connection with the bodily injury liability claim asserted by Rebecca Villa.  Pl.'s Ex. D (July 21, 2004 letter from Tamy Weidner); Pl.'s Ex. E (November 23, 2004 letter from Robert Unterburger).  While the July 21, 2004, letter references subsection (h) without taking into account the amendments to subsection (h) (combined intentional act and criminal act exclusion) in effect due to the transition endorsement, and the November 23, 2004, letter references subsection (p) (criminal act exclusion) which was added by virtue of the transition endorsement, both letters cite to language from the policy documents that put Nancy Kovach on notice that a coverage exclusion relating to Troye Kovach's potentially criminal or intentional act might bar coverage.  Without addressing whether the Villa defendants have

16

standing to raise this estoppel defense in the first place, the court finds no evidence in the record that Nancy Kovach was prejudiced by virtue of these reservation of rights letters and the subsequent declaratory judgment action.  Plaintiff is not estopped from asserting the intentional act exclusion and criminal act exclusion in this declaratory judgment action.

## V.      Criminal Acts Exclusion

In this case, plaintiff argues that it is not obligated to defend or indemnify Troye Kovach for the claims asserted by the Villa defendants in their civil complaint based upon subsection (h) as amended by the transition endorsement, the intentional acts exclusion, and, in the alternative, subsection (p), added by virtue of the transition endorsement, the criminal acts exclusion.  Here, the criminal acts exclusion is dispositive of the case and will be the focus of this decision.

Plaintiff cites the Pennsylvania statute prohibiting furnishing alcohol to a minor in further support of its argument that the facts averred in the underlying complaint preclude coverage under the Policy due to the criminal acts exclusion.  See 18 Pa. Cons. Stat. § 6310.1.  Section 6310.1  provides in relevant part:

> **§ 6310.1. Selling or furnishing liquor or malt or brewed beverages to minors**
> (a) Offense defined.– . . . [A] person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age. . . .

Id.  Plaintiff argues that although defendant Troye Kovach has not been charged with a crime, the language of the policy exclusion applies even if "[s]uch **covered person** is not actually charged with or convicted of a crime."  Pl.'s Ex. B at 12 (internal page 2) (emphasis in original).

The Villa defendants, however, although they acknowledge that the Policy relied upon by

17

plaintiff is the policy in force at the time of the incident, and they do not dispute the exclusions set forth in the Policy, argue that the language of the Policy is ambiguous by virtue of the policy exclusion cited in the main body of the Policy being amended by the transition endorsement, and by virtue of the fact that the first reservation of rights letter cited the exclusion formerly in effect and the second reservation of rights letter cited the amended exclusions.  The Villa defendants further argue that language of the exclusion prior to the amendments is less restrictive and, in light of the ambiguity, the policy should be construed in favor of the insured and the language of the exclusion prior to the amendments set forth in the transition endorsement, which the Villa defendants argue is less restrictive, is the language that should apply to this case.  In addition, the Villa defendants argue that under this less restrictive language, coverage should be afforded to Troye Kovach for the claim asserted by the Villa defendants in the underlying civil complaint.

Plaintiff responds that the policy exclusions are not ambiguous, the Villa defendants lack standing to raise this issue, and Pennsylvania courts have rejected the interpretation of the policy language that the Villa defendants urge in this case.  Moreover, while the Villa defendants argue that an insured's understanding of a policy is irrelevant to whether the policy language is ambiguous, plaintiff points to Nancy Kovach's deposition testimony in support of the argument that she understood that the Policy does not insure criminal acts.  Plaintiff argues that the reservation of rights letters do not preclude plaintiff from denying coverage based on the applicable exclusions because courts have held that an insurer can raise a different exclusion from the exclusion cited in a reservation of rights letter where the insureds were on notice of a potential coverage issue after an accident.

The court needs to consider whether the language in the criminal acts exclusion set forth

18

in subsection (p) – which provides the Policy does not cover losses with respect to personal

liability and medical expense including bodily injury that results from criminal acts by covered

persons  –  is ambiguous.  The subsection provides:

> (p) Resulting from criminal acts or omissions of or at the direction
> of one or more **covered persons**.  This exclusion applies even if:
>
> (1) Such **covered person** lacks the mental capacity to govern his or
> her conduct;
> (2) Such **covered person** is not actually charged with or convicted
> of a crime.

Id. at 11- 12 (internal page 2)(emphasis in original).  The court finds that this language is not

ambiguous.  This language makes clear that the policy will not apply to bodily injury that results

from "criminal acts or omissions" by "covered persons" even if "covered persons" are "not

actually charged with or convicted of a crime."  There is no dispute that Troye Kovach is a

"covered person."  The ordinary meaning of "criminal acts" can only be understood in one sense.

"An act is criminal if it violates the State's criminal code."  Allstate Ins. Co. v. Brown, 16 F.3d

222, 225 (7th Cir. 1994) (citing Allstate Ins. Co. v. Carmer, 794 F.Supp. 871, 873 (S.D.Ind.

1991)).  In this case, it is beyond peradventure that furnishing alcohol to a minor is a crime under

the laws of the Commonwealth of Pennsylvania under 18 PA. CONS. STAT. § 6310.1, which was

previously quoted.

There is no dispute that the facts averred in the underlying civil complaint asserted by the

Villa defendants against Troye Kovach, which are undisputed at this stage, include the facts that

Chistopher Hutchinson was a minor; Troye Kovach knew Hutchinson was a minor; Troye

Kovach provided him with liquor; Hutchinson consumed the liquor and became intoxicated; and

this resulted in the bodily injury to Rebecca Villa.  The facts alleged in the underlying criminal

19

complaint show that Troye Kovach's conduct met the elements necessary for the crime of furnishing alcohol to a minor.  There is also no dispute that Rebecca Villa was injured as a result of Troye Kovach furnishing alcohol to Hutchinson; Hutchinson consuming that alcohol and becoming intoxicated; Hutchinson being chased by the police; and Hutchinson ultimately colliding with Rebecca Villa in a collision that resulted in her injuries.

In addition, plaintiff argues that injury to the public is a foreseeable consequence of supplying alcohol to a minor.  See Congini v. Portersville Valve Co., 470 A.2d 515 (Pa. 1984) (social host liability for injuries resulting from a minor's intoxication).  As the Court of Appeals of Michigan stated in Allstate Ins. Co. v. Keillor, 511 N.W. 2d 702 (Mich. App. 1993), in affirming the  trial court's grant of summary disposition on the basis that a policy exclusion for intentional and criminal acts applied to preclude coverage in that case:

> We find that where, as here, an insured knowingly furnishes
> alcohol to a minor and the minor, after drinking all night, gets into
> an automobile to drive home, injury reasonably can be expected to
> occur. A minor's driving of a car while intoxicated and causing an
> accident is the natural, foreseeable, expected, and anticipated
> consequence of alcohol knowingly being furnished to the minor
> who proceeds to take the opportunity actually to drink all night at a
> party.

Id. at 705.

The criminal act exclusion is not ambiguous because it is not "reasonably susceptible of different constructions and capable of being understood in more than one sense."  Hutchinson, 519 A.2d at 390.  The court will not strain to find an ambiguity.  Regents of Mercersburg College, 458 F.3d at 172 (citing Steuart, 444 A.2d at 663).  The act of furnishing alcohol to a minor is a criminal act within the meaning of the exclusionary clause.  Because "in Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . . is to be given effect, and courts should not

torture the language to create ambiguities but should read the policy provisions to avoid it,'" this

court finds that the facts averred in the complaint in the underlying action trigger the criminal

acts exclusion upon which plaintiff relies in this declaratory judgment action.  USX Corp., 444

F.3d at 198 (quoting Selko, 139 F.3d at 152 n.3).  Plaintiff does not have a duty to defend or a

duty to indemnify Nancy Kovach and Troye Kovach for the claims asserted against Troye

Kovach by the Villa defendants in the underlying civil complaint.  Sikirica, 416 F.3d at 225-26.

Other courts have upheld similar criminal act exclusions.  See Allstate Ins. Co. v. Brown, 16 F.3d

222, 226 (7th Cir. 1994) (Indiana law; collecting decisions from multiple jurisdictions); Allstate

Ins. Co. v. Keillor, 511 N.W.2d 702 (Mich. Ct. App. 1993).[2]  The Villa defendants provide no

legal authority to support their contention that the language of the Policy is ambiguous by reason

of the amendment to the language by transition endorsement.  Under these circumstances, the

amendment to the language by the transition endorsement does not affect the court's finding that

the applicable Policy language in the criminal acts exclusion is unambiguous and precludes

coverage.

     The court need not reach whether the language of the intentional acts exclusion is

ambiguous or not.  The court finds that there is no duty to defend, and therefore no duty to

indemnify, by virtue of the criminal acts exclusion in the Policy precluding coverage.  Moreover,

the court need not consider plaintiff's argument that Nancy Kovach's deposition testimony shows

that she understood that the policy did not insure criminal acts to reach this decision.

_____

[2]In addition, it would be against the public policy of Pennsylvania to require insurance
companies to provide coverage for the intentional torts or criminal acts of insureds.  See
Potamkin, 961 F.Supp. at 113 (citations omitted).

***Order***

  **AND NOW**, this 14th day of August, 2007, upon consideration of the parties' arguments

and supporting documents, **IT IS ORDERED** that plaintiff's motion for summary judgment

(Doc. No. 39) is **GRANTED** and the Villa defendants' motion for summary judgment  (Doc. No.

46) is **DENIED** as more fully set forth herein.

                                                              By the court:


                                                               /s/ Joy Flowers Conti
                                                              Joy Flowers Conti
                                                              United States District Judge


cc:      Counsel of record